AIR PRODUCTS AND CHEMICALS, INC., Plaintiff,

v.

UNITED STATES, Defendant,

Sinopec Sichuan Vinylon Works, Defendant–Intervenor,

Guangxi Gitic Import & Export Corp. And Guangxi Vinylon Plant, Defendant–Intervenors.

Slip Op. 98–165.
Court No. 96–06–01573.

United States Court of International Trade.

Dec. 15, 1998.

Ellis & Aeschliman (David R. Busam), Wickens & Lebow (Edward M. Lebow) for Plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director; Cynthia B. Schultz, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Of Counsel, Robert J. Heilferty, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, Counsel for Defendant.

Williams, Mullen, Christian & Dobbins (William E. Perry) for Defendant–Intervenor, Sinopec Sichuan Vinylon Works.

Aitken Irvin Lewin Berlin Vrooman & Cohn, LLP (Bruce Aitken) for Defendant–Intervenors, Guangxi Gitic Import & Export Corp. and Guangxi Vinylon Plant.

## OPINION

POGUEU Judge.

On May 6, 1998, this Court remanded certain aspects of the Department of Commerce ("Commerce" or "the Department") final determination in *Polyvinyl Alcohol From the People's Republic of China*, 61 Fed.Reg. 14,-057 (Dep't Commerce 1996)(final det.)("Final Determination"). *See Air Products and Chemicals, Inc. v. United States*, 22 CIT ——, 14 F.Supp.2d 737 (1998)("Air Products").

The remand order directed Commerce to cite evidence to support its conclusion that VAM Organic Chemicals, Ltd. (VAM Organic) and Polychem, LTD. (Polychem) are equally representative of the polyvinyl alcohol (PVA) industry in India, thereby justifying the use of a simple average of the available data from both producers in valuing certain factors of production. *Id.* at ——, 14 F.Supp.2d at 746. Plaintiff Air Products and Chemicals Inc., objects to Commerce's remand determination.

## Discussion

This case concerns the "factors of production" methodology applicable in a nonmarket economy proceeding.[1] In the underlying administrative review, Commerce used India as the surrogate market economy, and sought surrogate values for each factor of production. Commerce stated that it would select, where possible, publicly available, published information ("PAPI").[2] Commerce provided interested parties with the opportunity to submit PAPI for the Department to consider when valuing the factor inputs. *Id.* at ——, 14 F.Supp.2d at 744.

Air Products, petitioner at the administrative level, provided rates for the factors of production based upon financial statements for VAM Organic. In its preliminary calculations, Commerce relied upon the petitioner's PAPI. *Id.* After making certain adjustments, Commerce applied a factory overhead rate of 37.44%, a general and administrative expenses ("G & A") rate of 45%, and a profit rate of 4.78%. *Id.*

Subsequently, Sinopec Sichuan Vinylon Works ("Sinopec"), one of the respondents in the proceeding, submitted data for Polychem, a company that Sinopec alleged to be a more significant producer of PVA than VAM Organic. In its final calculations, Commerce used a simple average of the factory overhead, G & A and profit percentages reported for both Polychem and VAM Organic. Commerce applied a rate of 29.44% for factory overhead, 37.57% for G & A, and 2.4% for profit. *Id.*

In *Air Products,* this Court upheld Commerce's use of an average of the data from both producers in order to value the factors of production as a permissible application of 19 U.S.C. § 1677b(c)(1). *See id.,* at ——, 14 F.Supp.2d at 745. Notwithstanding its approval of the Department's methodology, the Court remanded the issue to Commerce for reconsideration because of Commerce's failure to cite evidence to support its conclusion that VAM Organic and Polychem are equally

representative of the PVA industry in India. *Id.* at ——, 14 F.Supp.2d at 746.

In its Remand Determination, Commerce explained that VAM Organic and Polychem are equally representative based on its analysis of the public financial statements of each company. Final Results of Redetermination Pursuant to Court Remand ("Remand Determination") at 4. Specifically, Commerce compared production and sales data from VAM Organic's 1992–93 audited financial statement to Polychem's 1992–93 audited financial statements. *Id.* Commerce stated that this comparison revealed basic similarities between the two PVA producers:

> For example, a basic comparison of these figures demonstrates that these producers have comparable capacity, production and sales figures. VAM Organic and Polychem had equivalent capacity (installed and licenses) of 2000 MT during the 1992–93 period. Notwithstanding plaintiff's claims, Polychem, not VAM Organic, had more significant actual production and sales of PVA during this period but, in any event, the data from both firms is reasonably comparable.

*Id.*

The Court finds that this constitutes substantial evidence supporting Commerce's finding that both producers are equally representative of the PVA industry in India.

Plaintiff does not dispute the appropriateness of Commerce's determination to rely on the public financial statements of the Indian PVA producers to evaluate their representativeness. Rather, Plaintiff disagrees only with Commerce's statement that there is reasonable evidence to conclude that the two surrogate producers were equally representative of the PVA industry or of the PRC producers under investigation. Pl.'s Comments & Opp'n to Commerce's Remand Det. ("Pl.'s Comments") at 2.

Specifically, Plaintiff maintains that the vertical integration of VAM Organic is "di-

---

**1.** Familiarity with the Court's earlier decision in this case is presumed.

**2.** Congress has directed that the valuation of the factors of production shall be based on the "best

available information" from "significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(1), (4)(1994).

rectly comparable" to the Chinese PVA producers, while Polychem is "much more diversified." *Id.* at 3. Plaintiff argues that Commerce failed to take into account the diversified nature of Polychem's activities. Therefore, Commerce has based its surrogate values not "upon the experience of producers from the industry *closest to the product under investigation,*" but rather on the diversified experience of a segment of the Indian chemical industry as a whole. *Id.* (emphasis provided).

Commerce responds that Air Products ignores the agency's reasonable preference for information specific to the subject merchandise. Def.'s Reply to Pl.'s Comments on Remand Determination at ("Def.'s Reply") at 4. Air Products explains that:

> [A]lthough Polychem may have manufactured more PVA than VAM Organic, in excess of 90 percent of VAM Organic's company-wide operations consist of production of PVA *and its upstream components*—i.e., merchandise directly comparable to the Chinese producers' various stages of production—while less than 25 percent of Polychem's company-wide production is of PVA and its upstream components. The reason is that Polychem is a much more diversified company.

Pl.'s Comments at 3. As Commerce points out, however, Air Product's argument mistakenly focuses upon the production of "upstream components," rather than upon the production of the subject merchandise. Def.'s Comments at 4; *see Air Products*, 22 CIT at —, 14 F.Supp.2d at 745 (noting that the use of data from two producers of the subject merchandise "comports with Congress' intent that the Department use relevant data on production of the *same class or kind of merchandise.*")(emphasis provided).[3]

Furthermore, Air Product's argument is also based upon its unsupported assertions regarding the comparative vertical integration of the Indian and PRC production.[4] *See* Pl.'s Comments at 3 (stating that VAM Organic's company-wide operations consist of production of PVA and its upstream components—i.e., merchandise directly comparable to the Chinese producers' various stages of production). In *Air Products,* this Court upheld "Commerce's conclusion that '[t]here is no evidence ... to indicate that the Indian producers are any less vertically integrated than the PRC PVA producers.'" slip op. 98–60 at 20. Accordingly, the Court will not revisit the issue here.

### Conclusion

In accordance with the foregoing opinion, the Court finds Commerce's Final Results of Redetermination Pursuant to Court Remand in *Air Products and Chemicals, Inc. v. United States,* 22 CIT —, 14 F.Supp.2d 737 (1998) to be supported by substantial evidence.

### JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED that the Final Results of the Department of Commerce's Redetermination Pursuant to Court Remand in *Air Products and Chemicals, Inc. v. United States,* 22 CIT —, 14 F.Supp.2d 737 (1998) are sustained in their entirety.

---

**3.** In fact, the Department's subsequently enacted regulation concerning its NME methodology states, "[f]or manufacturing overhead, general expenses, and profit, the [agency] normally will use non-proprietary information gathered from producers of identical or *comparable merchandise* in the surrogate country." 19 C.F.R. § 351.408(b)(4) (1998)(emphasis added). The regulation makes no reference to any other related merchandise, such as upstream products. Furthermore, Congress' guidance regarding the term "comparable merchandise" is that it be of the same general class or kind of merchandise.

*See Union Camp Corp. v. United States,* 22 CIT —, —, 8 F.Supp.2d 842, 848 (1998).

**4.** Air Products also argues that Commerce has failed to address its basis for determining that the company-wide data of the two surrogates—one with more than 90 percent of its production involved with PVA and its upstream components and the other with less than 25 percent of its production involved with PVA and its upstream components—were equally representative of the PVA industry or the fully integrated PRC producers under investigation. Pl.'s Comments at 4.